# Steve Zissou & Associates
## Attorneys at Law
42 40 Bell Boulevard, Suite 302
Bayside, New York 11361

Office   (718) 279 4500                                               Email: stevezissou@verizon.net
Facsimile (718) 281 0850

**BY ECF**

July 11, 2014

Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Asaro, et al.*
      Criminal # 14 Cr 26 (ARR)

Dear Judge Ross:

For the reasons set forth below, I write in support of an application to preclude the government from reading email correspondence between my client and his counsel.

## Background

On or about June 9, 2014, members of the Eastern District Bar received notice from Magistrate Judge Cheryl L. Pollak, that the United States Attorney's Office for the Eastern District of New York was taking the position that communications between counsel and their clients over the prison email system known as "Trulincs," are not privileged. After receiving this notice, at a status conference in this case held on June 11, 2014, government counsel confirmed that the prosecution team intended to read my communications with Mr. DiFiore over Trulincs.  At the request of counsel for the defendant, the government agreed not to review the attorney/client emails until the issues had been fully briefed.  This letter/motion follows.

## Current Limitations On The Unfettered Right To Counsel

**A.   The Protective Order**

On or about January 28, 2014, at the request of the government, Your Honor signed a protective order which precludes the defendants from obtaining copies of the consensual recordings in this matter for their own personal review and inspection. Rather, under the terms of the order, counsel for the defendants may review the Protected Materials with the defendants but may not permit the defendants to retain them. Among other things, the government claimed that the protective order would not cause "prejudice" to any of the defendants charged in the indictment.

**B.   The Separation Orders**

In addition to the complications posed by the restrictive protective order, on May 9, 2014, at the request of the government, the MDC placed separation orders between all four of the above referenced defendants. There was no incident that prompted the separation orders and indeed three of the defendants had been housed together on the same floor without incident prior to May 9, 2014. The separation orders have severely curtailed both counsels' access to their clients, and the discovery review process resulting in the defendants' inability to prepare for trial and a denial of their due process rights.

A separation order at the MDC implicates more than housing. A separation order dictates that the defendants can never be on the same floor together unless they are at a prearranged co-defendant meeting where counsel is present. Accordingly, if one of the defendants is on a legal or social visit, another attorney cannot visit their client.

**C.**   



**Argument**

Regardless of whether such communications qualify for protection under the attorney-client privilege, the government's decision to read our communications with our client is entirely inappropriate. As explained herein, the government's decision will frustrate Mr. DiFiore's access to counsel and, given the unique circumstances of this case and the terms and conditions of his confinement, will violate Mr. DiFiore's right to due process and the effective assistance of counsel. Thus, we respectfully request that the Court order the government to segregate and not review all correspondence between Mr. DiFiore and his attorneys of record in this action sent over Trulincs.

It is well-settled that federal courts have broad powers to control their proceedings, including over matters related to discovery. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (Federal court's inherent powers arise from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (citation omitted); *United States v. Sachakov*, 812 F. Supp. 2d 198, 206 (E.D.N.Y. 2011) (noting that federal courts have "broad discretion" to "fashion[] appropriate remedies in both civil and criminal matters."); *United States v. Taylor*, 25 F.R.D. 225, 228 (E.D.N.Y. 1960) (court retains inherent power relating to matters of discovery); see also *Geders v. United States*, 425 U.S. 80, 86 (1976) ("Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice . . . . The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process.") (citation omitted). The court's inherent powers are even broader in criminal matters, see *Crawford v. United States*, 212 U.S. 183, 194 (1909), and may be invoked to protect a party's legal rights. See *Shipp v. Todd*, 568 F.2d 133, 134 (9th Cir. 1978) (federal courts have inherent power to expunge criminal records "when necessary to preserve basic legal rights.") (citations omitted).

Here, the government's decision to read all of our communications with Mr. DiFiore over Trulincs frustrates Mr. DiFiore's right to access of counsel. As the Supreme Court has said, "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's

skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (citations omitted). The right of access to counsel is even more crucial now, pre-trial, as this is the "most critical period of the proceedings . . . when consultation, thorough-going investigation and preparation are vitally important[.]" *Massiah v. United States*, 377 U.S. 201, 205 (1964) (internal marks and citation omitted).

This is especially true here given the complexity of this case, Mr. DiFiore's medical issues and the need for him to actively participate with counsel to prepare his defense. Since the initial appearance in this case, the government has produced to counsel thousands of pages of discovery and hundreds of hours of audio recordings. The most recent discovery, made available on June 19, 2014, consists of the following: pen register data, historical cell site data, analysis of two Samsung phones, analysis of one iPhone 4S, surveillance photographs, property records and domicile documents

While in person visits will, of course, be necessary, it is considerably more cost-effective and efficient for us to communicate with Mr. DiFiore via Trulincs than to expend significant time traveling to and from the MDC or seeking approval for an unmonitored telephone call each time we need to speak with him about his case. And, of course, his medical issues make it imperative that we have the unfettered ability to communicate with him on a hourly basis so that we can ensure that he is receiving the "stellar" medical care that the government has represented is being provided by the Bureau of Prisons.

For the reasons set forth above, we respectfully request that the Court order the government to segregate and not review any emails sent between Mr. DiFiore and his attorneys of record in this action via the Trulincs system.

Thank you very much for your consideration in this matter.

Respectfully submitted,

*Steve Zissou*
Steve Zissou
Sally J.M. Butler
Attorneys for Defendant
Thomas DiFiore

cc: all parties by ecf