

U.S. Department of Justice

United States Attorney
Eastern District of New York

EAG:NMA/ALC
F. #2014R00055

271 Cadman Plaza East
Brooklyn, New York 11201

July 14, 2014

By Hand and ECF

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:    United States v. Thomas Di Fiore
               Criminal Docket No. 14-26 (S-1) (ARR)

Dear Judge Ross:

      The government submits this letter in opposition to the defendant's application to preclude the government from reviewing emails between defense counsel and the defendant sent through the Bureau of Prisons' ("BOP") Trust Fund Limited Inmate Computer System ("TRULINCS").  As set forth below, the law is clear that such communications are not protected by the attorney-client privilege.  Accordingly, the government respectfully submits that the Court should deny the defendant's application.

Background

      The BOP permits prisoners at the MDC to send and receive emails from inmate-specific accounts administered through TRULINCS.  Emails sent by prisoners through the TRULINCS system are monitored, stored and reviewed by the BOP, and inmates must confirm that they are aware of, and consent to, this review prior to their accessing the TRULINCS system.  Specifically, each time an inmate logs onto TRULINCS, the system generates a message to the inmate with the following warning:

> The Department may monitor any activity on the system and search and retrieve any information stored within the system.  By accessing and using this computer, I am consenting to such monitoring and information retrieval for law enforcement and other purposes.  I have no expectation of privacy as to any communication on or information stored with the system.

Further down the page, the same warning banner states:

> I understand and consent to having my electronic messages and system activity monitored, read, and retained by authorized personnel. <u>I understand and consent that this provision applies to electronic messages both to and from my attorney or other legal representative, and that such electronic messages will not be treated as privileged communications, and I have alternative methods of conducting privileged legal communication.</u>

(emphasis added). In order to continue using the system and access their email, the inmate must click "I accept."

Similarly, non-inmate users of TRULINCS, <u>including inmates' attorneys</u>, are provided with notice that all communications on the system are monitored. To use TRULINCS, non-inmate users must be added to an inmate's "contact list." Once the inmate adds someone to his or her contact list, the TRULINCS system sends a generated message to the proposed contact's email address. That generated email states, <u>inter alia</u>, "[b]y approving electronic correspondence with federal prisoners you consent to have the Bureau of Prisons staff monitor the content of all electronic messages exchanged." The recipient of the email is then directed to a website where he or she must insert a specific code in order to be given access to TRULINCS.[1]

## Legal Analysis

It is well established that communications sent by a prisoner to an attorney through media known by the prisoner (and the attorney) to be monitored by the BOP cannot qualify for protection under the attorney-client privilege because such communications are manifestly not intended to be kept confidential – an essential element of the privilege. In <u>United States v. Mejia</u>, 655 F.3d 126, 133 (2d Cir. 2011), the Second Circuit held that an inmate's communication over a telephone that the inmate knew was being recorded by prison authorities was not protected by the attorney-client privilege. <u>See id.</u> ("We agree with the district court that, on the basis of the undisputed fact that [defendant] Rodriguez was aware that his conversation was being recorded by BOP, Rodriguez's disclosure to his sister of his desire to engage in plea discussions with his attorney was not made in confidence and thus constituted a waiver of the privilege."). Other circuits have similarly held that when an inmate is aware that his calls are being recorded, those calls are not protected by a privilege. <u>See</u> <u>United States v. Hatcher</u>, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of the prison

---

[1] In addition, BOP's TRULINCS Program Statement 5265.13 specifically states that "special mail" recipients or other legal representatives on an inmate's contact list may be added to the TRULINCS system, with the acknowledgment that electronic messages exchanged with those individuals will not be treated as privileged communications and will be subject to monitoring.

2

recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private. The presence of the recording device was the functional equivalent of the presence of a third party."); United States v. Madoch, 149 F.3d 596, 602 (7th Cir. 1998) (holding that marital privilege did not apply when spouse seeking to invoke the privilege knew that the other spouse was incarcerated); see also United States v. Pelullo, 5 F. Supp. 2d 285, 289 (D.N.J. 1998) ("[T]o the extent that defendant engaged in telephone conversations with attorneys on the monitored line the communications were not privileged. Defendant had no expectation of privacy in these conversations. They were knowingly made in the presence of the Bureau of Prisons through its taping and monitoring procedures. This constitutes a waiver of any privilege that might otherwise have existed."); United States v. Lentz, 419 F. Supp. 2d 820, 827-28 (E.D. Va. 2005) ("[A]n inmate's telephone conversations with counsel are not protected by the attorney-client privilege where, as here, the inmate is notified at the outset that the calls are recorded and subject to monitoring."). The reasoning of Mejia leads inescapably to the conclusion that emails sent to attorneys through the similarly monitored TRULINCS system cannot be privileged.

The American Bar Association ("ABA") has already acknowledged that the communications between inmates and their attorneys on TRULINCS are not privileged. In February 2006, when TRULINCS was undergoing a limited initial rollout, the ABA's Governmental Affairs Office submitted a letter to Harley Lappin, the Director of the BOP. In that letter, the ABA urged the BOP to make permanent and extend the TRULINCS program, which was then being tested at several federal correctional institutions. In its letter, the ABA acknowledged that the TRULINCS system would be monitored by the BOP and stated that TRULINCS emails are utilized for unprivileged communications:

> Although presenting confidentiality concerns, TRULINCS greatly enhances the attorney-client relationship by supplementing unmonitored forms of communication, that is legal mail, legal calls and professional visiting. It affords attorneys and their incarcerated clients the possibility of making expedited contact when quick decisions must be made or non-privileged information relayed. . . . TRULINCS also eases the burden on institution staff by relieving them of the responsibility of coordinating visits or calls for what are otherwise administrative, though time-sensitive, matters.

(emphasis added).

It should also be noted, as recognized in the ABA's letter, that the MDC does offer multiple alternative avenues through which inmates and attorneys can communicate in ways that indisputably maintain confidentiality, including (i) unmonitored, in-person visits; (ii) unmonitored telephone calls, which must be approved by a staff member; and (iii) "Special Mail" correspondence, which can only be opened in the presence of an inmate.

3

Discussion

The foregoing review of the TRULINCS system and relevant case law make clear that neither the defendant nor his counsel had any reasonable factual or legal basis to believe that emails they exchanged over TRULINCS were protected by the attorney-client privilege.

Defense counsel essentially concedes that the communications at issue are not privileged, but claims that allowing the government to review such communications would violate Mr. Di Fiore's Sixth Amendment right to counsel.[2] As an initial matter, none of the cases to which the defendant cites in support of his Sixth Amendment argument is apposite here. In any event, under pertinent case law, the defendant's Sixth Amendment argument fails because, to the extent the government's review of TRULINCS emails at all deters the defense from using that mode of communication in this case, that inconvenience does not unreasonably interfere with the defendant's ability to consult his attorney and prepare his defense in light of the other methods of attorney-client communication available during his pretrial detention. See, e.g., Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001) (holding that impairment of Sixth Amendment right to counsel consists of "unreasonable interference with the accused person's ability to consult counsel"); id. at 187 (citing with approval Second Circuit standards "finding prison regulations restricting pretrial detainees' contact with their attorneys to be unconstitutional where they 'unreasonably burdened the inmate's opportunity to consult with his attorney and to prepare his defense'" (quoting Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir. 1978), rev'd on other grounds by Bell v. Wolfish, 441 U.S. 520 (1979))); United States v. Dettelis, 372 Fed. Appx. 105, 106-07 (2d Cir. 2010) (holding, in pretrial detention context, that the effect of making "communication with counsel and preparation for trial more cumbersome, without more, . . . [does] not result in an interference of constitutional significance" (citing Benjamin)) (unpublished decision).

In addition, as to defense counsel's suggestion that the Sixth Amendment somehow requires that the defendant have protected email access to his lawyer, that argument is undermined by the program's recent adoption and conditional nature. See BOP Program Statement P5265.13, available at http://www.bop.gov ("Use of TRULINCS is a privilege; therefore, the Warden or an authorized representative may limit or deny the privilege of a particular inmate . . . ."(Emphasis added)). The existing set of communication channels available to defendants in which to communicate confidentially with counsel – unmonitored phone calls, monitored phone calls, regular mail – was sufficient to satisfy the Sixth Amendment before the recent creation of TRULINCS, and they are similarly sufficient now.

---

[2] Defense counsel also contends in conclusory fashion that the government's review of his and his client's TRULINCS emails will violate the defendant's right to due process of law, see Defendant's Letter at 3, but does not explain how such review would violate due process. The government respectfully submits that its review of the defendant's and his attorney's unprivileged TRULINCS emails does not implicate, let alone violate, the defendant's Fifth Amendment right to due process of law.

The defendant claims that the combination of the separations in place at the facility and the protective order over the discovery materials have severely curtailed Mr. Di Fiore's access to his counsel.  He further claims that Mr. Di Fiore's medical condition requires the defendant to send daily emails about his condition to counsel in order to document it.  These arguments are contradicted by the facts in this case, facts which cannot be disputed.  First, defense counsel ignores the inconvenient truth that Mr. Di Fiore has daily access to his counsel by telephone, which calls are not monitored.  To the extent that he needs to, for example, provide a report of his medical condition on a daily basis, the defendant could simply call his counsel and provide such a report.  Additionally, based upon the representations made by counsel at the prior status conferences, two paralegals from defense counsel's office and some combination of the other lawyers in this case, including defense counsel, meet with the defendant and his codefendants nearly on a daily basis to review discovery.  Should the defendant need to communicate about discovery or his medical issues, he therefore is in a position to do so in person at least several times per week.[3]

While defense counsel protests that he needs to communicate with Mr. Di Fiore via email about the voluminous discovery in the case, this argument is significantly undercut by his statements at the last status conference in support of his severance motion.  (". . . . Mr. Di Fiore's case is different materially from the rest of the case. . . . The indictment was filed in January.  It's now June.  And while I have volunteered two people who work for me to participate in the discovery conference, frankly, I don't need them.  Mr. Di Fiore and I have more than enough time to go through discovery material without them.")  Transcript of June 11, 2014 Status Conference, at 9:23-25, 10:2-6 (attached hereto as Exhibit A).  While the government has made additional disclosures since the last status conference, including pen register data and cell site information, the defendant has not demonstrated – and cannot demonstrate – how communicating about such materials over email is essential to his Sixth Amendment right to counsel given the other avenues available to him.  Such materials can be reviewed in person with the discovery team in place, which includes <u>two</u> paralegals from Mr. Zissou's office.  Counsel's argument seems to boil down to the fact that it would be easier for him to communicate with his client by email about privileged matters; however, that does not change the fact that the communications are not privileged communications under the law and that he has ample access to his client through unmonitored telephone calls and in person visits.

Finally, it is worth noting that the government's position is motivated by practical, not strategic, concerns.  The fact is that it is burdensome for the government to segregate out attorney emails on the TRULINCS system.  It requires an attorney from the government, who is part of a firewall team, to review every email in the inmate's email account and segregate out emails with attorneys.  The TRULINCS system was not designed to be used for privileged attorney-client communications.

---

[3] It is not clear that the communications Mr. Di Fiore is sending to counsel about his medical issues are privileged in nature.

<u>Conclusion</u>

For the foregoing reasons, the government respectfully submits that the defendant's application should be denied.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/_____
Nicole M. Argentieri
Alicyn L. Cooley
Assistant U.S. Attorneys
(718) 254-6232/6389

cc: Steve Zissou, Esq. (by ECF)