

U.S. Department of Justice

United States Attorney
Eastern District of New York

NMA:ALC
F. #2014R00055

271 Cadman Plaza East
Brooklyn, New York 11201

March 18, 2015

By Hand and ECF

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Thomas Di Fiore and John Ragano
             Criminal Docket No. 14-26 (S-2) (ARR)

Dear Judge Ross:

      The government respectfully submits this letter memorandum in advance of the sentencings of defendants Thomas Di Fiore ("Di Fiore") and John Ragano ("Ragano") in the above-referenced case on March 24 and 25, 2015, respectively. For the reasons set forth below, the Court should sentence Di Fiore to a term of imprisonment within his advisory Guidelines range of 21 to 27 months, and Ragano to a 51-month term of imprisonment as recommended in the government's plea agreement with Ragano.

I.     Background

      The defendants were arrested on January 23, 2014 based on an indictment charging them with one count of extortionate collection of credit conspiracy, in violation of 18 U.S.C. § 894(a)(1), and one count of extortionate collection of credit, in violation of 18 U.S.C. § 894(a)(1). On February 12, 2014, a grand jury returned a superseding indictment charging the defendants with one additional count of collection of unlawful debt conspiracy in violation of 18 U.S.C. § 1962(d).

      On October 8, 2014, Di Fiore and Ragano each pled guilty to the sole count of the above-referenced superseding information (the "Information"),[1] charging a collection of

---

[1]     Codefendant Jack Bonventre also was charged in and pled guilty to the sole count of the above-captioned Information. The government will write under separate cover to address issues pertaining to Bonventre's sentencing, currently scheduled for April 8, 2015.

unlawful debt conspiracy, in violation of 18 U.S.C. § 1962(d). The charge is based on conduct described in more detail below, which the defendants committed while they were inducted members of the Bonanno organized crime family (the "Bonanno family") of La Cosa Nostra ("LCN"), as part of their participation in the Bonanno family's criminal activities. Di Fiore has served as a member of the administration, a captain, a soldier and an associate within the Bonanno family, and Ragano has served as a soldier and an associate within the family. The defendants have been in custody since their January 23, 2014 arrest.

A.   Offense Conduct

The charged collection of unlawful debt conspiracy spanned approximately March 1, 2013 to June 30, 2013, and related to a loan that a Bonanno family associate (the "associate") had extended to an individual (the "car wash employee") affiliated with the Gambino organized crime family of LCN (the "Gambino family"). See Presentence Investigation Reports ("PSRs") ¶ 16.[2] The loan was extended to the car wash employee at an interest rate that was at least twice the enforceable rate under New York state law.[3]

The defendants' and their coconspirators' involvement in the conspiracy is evident from, inter alia, the statements of Ragano and codefendant Vincent Asaro ("V. Asaro") on consensual recordings made by a cooperating witness ("CW-1"). For example, in a March 8, 2013 consensual recording, V. Asaro mentioned to CW-1 that the associate had been loaning thousands of dollars to individuals including the car wash employee. CW-1 understood from V. Asaro that the associate did not have permission from his superiors in the Bonanno family to make these loans, and that the car wash employee loan was not being paid.

In a consensually recorded meeting with CW-1 and others on April 26, 2013, V. Asaro and Ragano discussed assaulting the associate and intimidating him into paying them and their coconspirators money collected on the car wash employee loan. Ragano asked V. Asaro soon after arriving at the April 26, 2013 meeting, "when do we stab this guy [the associate] in the neck? That's what I want to know," to which V. Asaro responded, "[s]tab him today. . . . Today! Today!" V. Asaro further told Ragano: "I told you to give him a fucking beating. Give him a fucking beating, I told you that. Listen, I sent three guys there to give him a beating, already, so it won't be the first time he got a beating from me." V. Asaro further advised Ragano, "when you go see Frankie from the car wash [the business

---

[2]   For ease of reference, where both defendants' Presentence Investigation Reports are identical, the reports will be cited collectively as "PSRs." Where the reports differ, they will be referred to respectively as "Di Fiore PSR" and "Ragano PSR."

[3]   The government objects to paragraph 31 of Di Fiore's PSR and paragraph 28 of Ragano's PSR insofar as they suggest that the associate was the victim of the collection of unlawful debt conspiracy to which the defendants pled guilty. Rather, the victim of that conspiracy was the car wash employee.

partner of the car wash employee]—you understand? You can't go alone. You gotta go with another goodfella [made member of the Bonanno family]. This way he can't deny it."

Ragano in turn told V. Asaro at the April 26, 2013 meeting what Ragano already had communicated to the associate, including: "I says, 'I'm telling you right now [associate], if I gotta fucking come back and forth here a hundred times because of his fucking shit, I'm going to beat your fucking ass,'" and "'[w]hat is the problem? Why would you want me to be the bad guy here? I'm going to wind up being the bad guy here [associate] and I'm not going to fucking stop when I start." Ragano also asked V. Asaro in the same conversation, "I collect, Bo . . . . do I do all right?", to which V. Asaro responded, "[y]ou do good." In addition, when V. Asaro asked Ragano at one point, "[h]ow come I get results understand—I . . . get results right away [?]", Ragano replied: "I don't get results? …Whatever you want me to do, Vin."[4]

As Ragano also discussed during the April 26, 2013 meeting, Ragano was employed by the associate at the associate's autobody business in Queens during the charged conspiracy. Cf. Ragano PSR ¶ 70 (noting that Ragano reported having been employed there from July 1, 2013 until January 23, 2014, the date of Ragano's arrest in this case). Ragano stated, "I try not to abuse him [the associate] in the office like Vin does . . . .You know what I mean . . . .I bring 'em in the back room at least," to which V. Asaro responded, "[o]h I abuse him in the fucking office in front of everybody. I abuse him in front of everybody." Ragano further stated, "[i]t's not even a job, Vin, I got to be honest with ya . . . . It's like found money from him."

In a meeting on May 16, 2013, V. Asaro explained to CW-1 in sum and substance and in part that the associate eventually notified V. Asaro or codefendant Jerome Asaro about the car wash employee loan because the associate needed someone to intercede and "sit down" on his behalf, i.e., meet with members of the Gambino family to resolve any debt-related dispute. V. Asaro further indicated that he had participated in such a sit-down, and that he recently had obtained money in connection with the loan. V. Asaro stated that he had received $10,000, Jerome Asaro had received $10,000, Ragano had received $6,000, and Tommy D (Di Fiore) was supposed to receive $4,000. V. Asaro stated that he had taken Di Fiore's share, however.

In a consensually recorded meeting on June 11, 2013, V. Asaro informed CW-1 of money he, J. Asaro, Bonventre and Di Fiore recently had received in connection with the loan, and denounced Di Fiore for collecting a large portion of that amount, saying he wanted to kill Di Fiore. This portion of the conversation is excerpted below:

---

[4] The government hereby objects to paragraph 21 of Di Fiore's PSR and paragraph 22 of Ragano's PSR insofar as they attribute certain excerpts of statements of Ragano and V. Asaro to a June 11, 2013 consensual recording. The relevant statements were in fact on the April 26, 2013 consensual recording.

3

| | |
|---|---|
| CW-1: | What happened with the money from uh – the what do ya call it, the, the car wash? |

. . . .

| | |
|---|---|
| CW-1: | They was supposed to give you… |
| V. Asaro: | Oh stop it.  Supposed to give me what?  We cut it up! |
| CW-1: | You got four thousand . . . . |
| V. Asaro: | Four thousand?  I got 14 thousand.  I blew it, gambling. |

. . . .

| | |
|---|---|
| CW-1: | Did you give, what's his name, Tommy [Di Fiore] the money? |
| V. Asaro: | Who? |
| CW-1: | Tommy, the $4,000. |
| V. Asaro: | [Inaudible] |
| CW-1: | See, that's what bothers me. |
| V. Asaro: | I had a big fight with him the other day.  We had $30,000 coming, he took $15,000 of it.  I want to kill this motherfucker.  We had $30,000 coming…me, Jackie and Jerry.  All right?  He says, well without us we wouldn't have collected it.  So we went for the money, gave me five, they gave him 15.  He says, "You owe me two."  Forget about the four, I owed him another two.  All right?  "I'm taking that two."  I said Tom, I ain't got nothing, man.  I said, you're taking 15?  "Yeah, without me," he says, "you wouldn't a got nothing." |
| CW-1: | He's that type of guy? |
| V. Asaro: | Oh he's a cocksucker.  Makes Joey Massino [former Bonanno family boss] look like St. Anthony, motherfucker. |

B.  The Defendants' Criminal Histories and Other Conduct

1.  Di Fiore

Beginning in the 1960s, Di Fiore was arrested on at least five occasions for a wide variety of crimes.[5] In 1970, Di Fiore was convicted in New York state court of reckless

---

[5] Di Fiore disputes having been arrested in or about 1996 on driving-while-intoxicated and other traffic-related charges.  See Letter of Def. Thomas Di Fiore, dated Mar. 16, 2015 ("Di Fiore Ltr."), at 3 n.2 (objecting to paragraph 58 of his PSR ).  The government notes that the criminal history report it has reviewed for Di Fiore includes this arrest.  Even

4

endangerment in the second degree and received a sentence of conditional discharge. In connection with this offense, Di Fiore was alleged to have, together with others, attempted to extort another individual for $4,000, during which offense the victim was restrained and physically injured. See Di Fiore PSR ¶ 47. Notably, the victim of this offense was the same individual whom Di Fiore was charged with assaulting and kidnapping in 1968.

Years later, in 2001, Di Fiore was convicted of federal extortion and was sentenced to 29 months' imprisonment followed by three years' supervised release. See United States v. DiFiore, Criminal Docket No. 00-604 (LDW) (E.D.N.Y.). The facts underlying the Hobbs Act extortion charge to which Di Fiore pled guilty in that case include that Di Fiore demanded payment from a proprietor of an adult video store (who, at that time, was cooperating with the government) in return for Di Fiore's and, by extension, the Bonanno family's, protection.

  2. <u>Ragano</u>

Ragano was first arrested in 1978 at the age of 16. A few years later, he was arrested and charged with attempted murder in the first degree of a police/correctional officer. Ragano ultimately pled guilty in Nassau County Court to robbery in the first degree, and was sentenced to eight to 24 years' imprisonment. Not long after he began serving his sentence, Ragano was charged with knowingly making or possessing dangerous contraband while incarcerated in the first degree. See Ragano PSR ¶¶ 51, 43-44.

In 1999, Ragano was convicted in New York state court of kidnapping in the second degree and was sentenced to ten years' imprisonment. Ragano displayed a handgun and held up an accounting firm in Ozone Park, ordering the firm's owners to turn over all of the firm's cash. Ragano and an accomplice restrained the owners in the back room of the firm. Soon thereafter, the police arrived and a hostage situation ensued. Ragano and his accomplice ultimately surrendered and Ragano hid the firearm he had used in the robbery, which was recovered the next day. See id. ¶ 45.

Ragano also was convicted in 2002, while serving a lengthy sentence in state custody, in the Eastern District of New York of federal conspiracy and theft of government fund charges, for which he received a sentence of 30 months' imprisonment, to be followed by three years' supervised release, as well as $68,923 in restitution. See id. ¶ 46. Ragano appears to have been inducted into the Bonanno family either during or very soon after his period of supervised release in that case.

In more recent years, as V. Asaro indicated in consensual recordings made by CW-1, Ragano engaged in the Bonanno family's criminal activities by, for example,

---

assuming a factual dispute between the parties regarding this arrest, as is clear from Di Fiore's PSR, the arrest does not carry any criminal history points and accordingly has no impact on Di Fiore's advisory Guidelines calculation.

participating in the robbery of a drug dealer – some of the proceeds of which were distributed to V. Asaro and Jerome Asaro, see id. ¶ 49 – and the assault of an individual with V. Asaro in 2013, see id. ¶ 48.[6]

II.   Discussion

   A.   Applicable Law

It is settled law that a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Gall v. United States, 552 U.S. 38, 49-50 (2007) (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

   B.   Di Fiore Should Be Sentenced Within the Applicable Guidelines Range

As an initial matter, the government notes that it stands by the advisory Guidelines calculation contained in its plea agreement with Di Fiore dated October 8, 2014.[7]

---

[6] Although Ragano objects to the other criminal conduct described in paragraphs 48 and 49 of his PSR because it is "solely based upon the statements of one of his co-conspirators [V. Asaro] and neither proven nor acknowledged as true by the Defendant," Letter from Def. John Ragano, dated Mar. 13, 2015, ECF Docket Entry No. 188 ("Ragano Ltr."), at 4, the government respectfully submits that the relevant consensually recorded statements of V. Asaro to CW-1 from January 7, 2011 and June 11, 2013 are reliable and, on their own, prove Ragano's participation in the criminal conduct by a preponderance of the evidence.

[7] The government objects to paragraph 35 of Di Fiore's PSR and paragraph 32 of Ragano's PSR insofar as they suggest the applicable United States Sentencing Guideline ("Guideline" or "U.S.S.G.") for the collection of unlawful debt conspiracy is U.S.S.G. § 2E2.1 (providing for a base offense level of 20). As is reflected in both Di Fiore's and Ragano's plea agreements dated October 8, 2014, U.S.S.G. § 2E1.1 should apply because there is no other Guideline that better captures the charged conduct and collection of

Pursuant to that calculation, Di Fiore's base offense level under United States Sentencing Guideline ("Guideline" or "U.S.S.G.") § 2E1.1(a)(1) is 19. With a one-level reduction pursuant to U.S.S.G. § 5K2.0 as a result of the global disposition reached in this case, and an additional three-level reduction for accepting responsibility and timely pleading guilty pursuant to U.S.S.G. § 3E1.1(a) and (b), Di Fiore's adjusted offense level is 15. Assuming Di Fiore falls within Criminal History Category II, Di Fiore's advisory Guidelines range is 21 to 27 months' imprisonment.

      The government respectfully submits that an incarceratory sentence within the range of 21 to 27 months is sufficient but not greater than necessary to achieve the purposes of sentencing with respect to Di Fiore. See 18 U.S.C. § 3553(a). As the government acknowledged in Di Fiore's plea agreement, the state of Di Fiore's health is relevant to the Court's sentencing determination pursuant to § 3553(a). This consideration, however, is counterbalanced by other compelling factors relevant to the Court's determination under § 3553(a), including the seriousness of the offense. Although Di Fiore in his sentencing submission noted that the victim of the charged collection of unlawful debt conspiracy was the car wash employee and not the associate, and contended that the car wash employee willingly repaid the subject debt, see Letter of Def. Thomas Di Fiore, dated Mar. 16, 2015 ("Di Fiore Ltr."), at 1, Di Fiore's attempt to sanitize the offense conduct is unavailing. Di Fiore, Ragano and their codefendants unquestionably drew upon the full force of the Bonanno family and its intimidating reputation in their dealings, whether direct or indirect, with the associate and car wash employee in furtherance of the charged conspiracy. In addition, contrary to Di Fiore's representation that "there is no evidence that [he] used or conspired to use extortionate means against either the lender or the borrower," Di Fiore Ltr. at 2, the consensually recorded statements of V. Asaro from June 11, 2013 prove Di Fiore's complicity in pressuring the associate to collect and distribute the loan debt and Di Fiore's significant financial reward for his involvement. The sum total of the coconspirators' conduct, whether directed at the associate or the car wash employee, should be considered by the Court in determining the appropriate sentences to impose in this case.

      The seriousness of the offense, paired with the formidable power Di Fiore wielded as a member of the Bonanno family's administration, the profits he enjoyed as a result of that position (including in connection with the instant offense), and his criminal history, which includes a prior conviction for extortion in this court, weigh in favor of an incarceratory sentence within the range of 21 to 27 months.

---

unlawful debt conspiracy and extortionate collection of credit are sufficiently distinct such that § 2E2.1(a)(1) should not apply. Accordingly, the base offense level for both defendants should be 19. In addition, the parties did not apply an aggravating role adjustment pursuant to U.S.S.G. § 3B1.1 in Di Fiore's plea agreement, and the government respectfully submits that the Court should not apply one on the facts of the charged conspiracy.

  C.  <u>Ragano Should Be Sentenced to a 51-Month Term of Imprisonment</u>

  The government also stands by the advisory Guidelines calculation contained in its plea agreement with Ragano dated October 8, 2014.[8]  Pursuant to that calculation, Ragano's base offense level pursuant to U.S.S.G. § 2E1.1(a)(1) is 19.  With a four-level upward adjustment pursuant to U.S.S.G. § 3B1.1(a) for Ragano's aggravating role in the instant offense, and a three-level reduction for accepting responsibility and timely pleading guilty pursuant to U.S.S.G. § 3E1.1(a) and (b), Ragano's adjusted offense level is 20.  Assuming Ragano falls within Criminal History Category III, his advisory Guidelines range is 41 to 51 months' imprisonment.

  As specified in the parties' plea agreement, the parties recommend pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) that the Court sentence Ragano to 51 months' imprisonment.  A sentence of 51 months in prison – the top of Ragano's advisory Guidelines range – would achieve the purposes of sentencing under 18 U.S.C. § 3553(a) by reflecting, <u>inter</u> <u>alia</u>, the seriousness of the instant offense and Ragano's pivotal role therein.  The government respectfully submits that Ragano's contention that "there was in fact no violence alleged against any of the alleged 'victims' nor was there in fact any violence perpetuated" in the instant offense, <u>see</u> Letter from Def. John Ragano, dated Mar. 13, 2015, ECF Docket Entry No. 188 ("Ragano Ltr."), at 3, is misleading and ignores Ragano's own explicit statements on the April 26, 2013 consensual recording.  As evidenced by those recorded statements, Ragano threatened with physical violence, if not outright assaulted, the associate during their interactions in connection with the car wash employee loan.  A sentence at the top of Ragano's advisory Guidelines range is therefore warranted.

  In addition, the recommended 51-month sentence strikes an appropriate balance by reflecting both Ragano's significant criminal history and his timely acceptance of responsibility in this case.

---

  [8]  In addition to the objections described above, <u>see</u> <u>supra</u> note 7, the government objects to paragraph 25 of Ragano's PSR and respectfully submits that a four-level aggravating role adjustment pursuant to U.S.S.G. § 3B1.1(a) is warranted in light of Ragano's central role in organizing the collection of the loan debt and his participation in threatening the associate in furtherance of the charged conspiracy.  The government also objects to paragraph 98 of Ragano's PSR insofar as the government, in its discretion, did not agree to the application of a one-level reduction in Ragano's offense level pursuant to U.S.S.G. § 5K2.0 in connection with the global disposition in this case.

III. <u>Conclusion</u>

For the foregoing reasons, the Court should sentence defendant Thomas Di Fiore to a term of imprisonment within his advisory Guidelines range of 21 to 27 months, and defendant John Ragano to 51 months' imprisonment.

      Respectfully submitted,

      LORETTA E. LYNCH
      United States Attorney

By:   /s/
      Nicole M. Argentieri
      Alicyn L. Cooley
      Assistant U.S. Attorneys
      (718) 254-6232/6389

cc:   Clerk of Court (ARR) (by ECF)
      Defense counsel (by ECF and E-mail)
      U.S. Probation Officers John Lanigan and Angelica Deniz (by E-mail)